**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESUS LUGO,<br>ANNA MARIE RAY, and<br>JACKIE DANNHEISER,<br>*on behalf of themselves,*<br>*FLSA Collective Plaintiffs,*<br>*and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>CITY WINERY, LLC,<br>CITY VINEYARD, LLC,<br>JOHN DOE CORPORATIONS 1-100,<br>and MICHAEL DORF,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs JESUS LUGO, ANNA MARIE RAY, and JACKIE DANNHEISER ("Plaintiffs") on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants CITY WINERY, LLC, CITY VINEYARD, LLC, JOHN DOE CORPORATIONS 1-100 (the "Corporate Defendants"), and MICHAEL DORF (the "Individual Defendant" and together with the Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiffs, potential collective plaintiffs, and putative class members were all victims of Defendants' scheme to underpay and avoid paying wages, overtime compensation, and tips to employees around the nation. Plaintiffs bring this wage and hour class and collective action on behalf of themselves and all persons who, during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, the parties' contracts, the laws of equity, and the following state laws and regulations in effect in the States where Defendants do business:

    i.   California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

    ii.  District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

    iii. Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

    iv.  Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

    v.   Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

    vi.  Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

    vii. New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.* ("NYLL");

    viii. Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

    ix.  Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.* ("PMWA");

    x.   Tennessee: Tennessee Code Annotated, Tenn. Code Ann. § 50-2-114;

(collectively, the "Relevant State Wage and Hour Laws" or "RSWHL").

2.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid minimum and

2

overtime wages due to invalid tip credit deductions, (3) disgorgement of illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

3.     Plaintiffs further allege, pursuant to all Relevant State Wage and Hour Laws (as relevant to each individual), that they and others similarly situated are entitled to recover from Defendants (as applicable to each individual State law): (1) unpaid wages, including overtime, due to time shaving, (2) unpaid minimum and overtime wages due to invalid tip credit deductions, (3) disgorgement of illegally retained gratuities, (4) statutory penalties due to wage statement and wage notice violations, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     Defendants are subject to personal jurisdiction in this judicial district as Defendants maintain their headquarters at 25 11th Ave, New York, NY 10011.

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

*i.*     *The Plaintiffs*

1.     Plaintiff JESUS LUGO ("Plaintiff LUGO") is a resident of Bronx County, New York.

2.     Plaintiff DANIELLE SMITH ANNA MARIE RAY ("Plaintiff RAY") is a resident of New York, New York.

3.     Plaintiff JACKIE DANNHEISER ("Plaintiff DANNHEISER") is a resident of Philadelphia County, Pennsylvania.

ii.    *The Corporate Defendants*

4.    Corporate Defendant CITY WINERY, LLC, with and through its subsidiaries, included herein as JOHN DOE CORPORATIONS 1-100, collectively own and operate hotels and restaurants, including those named below, as a single integrated enterprise under the various trade names at the following addresses:

(1)    City Winery Pier 57 – 25 11th Avenue, New York, NY  10011;

(2)    City Winery Grand Central – 89 E. 42nd Street Vanderbilt Hall; New York, NY 10017 (now closed);

(3)    City Winery Rockefeller Center – 77 Rockefeller Plaza, New York, NY 10019;

(4)    City Vineyard – 233 West Street, New York, NY 10013;

(5)    City Winery Hudson Valley - 23 Factory St, Montgomery, NY 12549;

(6)    City Winery Atlanta – 650 North Avenue NE, Atlanta, GA 30308;

(7)    City Winery Boston – 80 Beverly Street, Boston, MA 02114;

(8)    City Winery Columbus – 2108 S. High Street, Columbus, OH 43207[1];

(9)    City Winery Washington D.C. – 1350 Okie St NE, Washington, DC 20002;

(10)    City Winery Napa – 1030 Main Street, Napa, CA 94559;

(11)    City Winery Philadelphia – 990 Filbert Street, Philadelphia, PA 19107;

(12)    City Winery Pittsburgh – 1627 Smallman Street, Pittsburgh, PA 15222; and

(13)    City Winery St. Louis – 3730 Foundry Way Suite 158, St. Louis, MO 63110;

---

[1] City Winery Columbus is listed on Defendants' website to open in late 2025 and will be operated under the same policies as Defendants' other Restaurants.

(14)    City Winery Nashville – 609 Lafayette Street, Nashville, TN 37203, (collectively, the "Restaurants").[3]

5.    Defendant CITY WINERY, LLC ("CW") is a foreign limited liability company formed under the laws of the State of Delaware, authorized to do business in New York with a principal place of business located at 25 11th Ave, New York, NY 10011 and an address for process of service in care of the Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

6.    Defendant CITY VINEYARD, LLC is a foreign limited liability company formed under the laws of the State of Delaware, authorized to do business in New York with principal place of business located at 233 West St., New York, NY 10013 and an address for process of service in care of the Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

*iii.*    *The Individual Defendant*

7.    Individual Defendant MICHAEL DORF is an Owner and Operator of all Corporate Defendants.

8.    At all relevant times, MICHAEL DORF exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class Members.

9.    At all relevant times, MICHAEL DORF has exercised the power and authority to, and also delegated to managers and supervisors, the power and authority to (i) hire and fire employees and managers, (ii) supervise and control or otherwise affect employee work schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise

---

[3] *See https://citywinery.com/*

directly or indirectly affect the quality, terms and conditions of employment for Plaintiffs FLSA Collective Plaintiffs, and Class Members.

10.     At all relevant times, MICHAEL DORF frequently visited each of the Restaurants to (i) inspect the operations and quality of food, service, and hygiene of the Restaurants, (ii) meet and confer with the Restaurants' General Managers  and other managers to discuss operations, sales, and overall status of the Restaurants and their employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiffs, FLSA Collective Plaintiffs, and Class Members) and managers and monitor their individual performances of duties and behaviors, (v) directly or indirectly reprimand any employees (including Plaintiffs, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior, and (vi) attend events.

11.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members could each complain to MICHAEL DORF (via direct contact during his visits to their relevant Restaurants) directly regarding any of the terms of their employment, and MICHAEL DORF would have the authority to directly affect any changes to the quality and terms of their employment.

12.     At all relevant times, MICHAEL DORF exercised functional control over the business and financial operations of all Corporate Defendants.

13.     Defendant MICHAEL DORF was not at every Restaurant continuously but instead "made the rounds" between different restaurants to confer with managers and supervise employees.

14.     Defendant MICHAEL DORF would confer with managers and supervisors of each Restaurant to discuss issues like revenue generation and employee scheduling, and he would also ask workers such as Plaintiffs how things were going and whether there were any issues he should be concerned about.

15.     At all relevant times, MICHAEL DORF's role and decisions made in connection to his role directly affected the nature, conditions, and circumstances of employment for Plaintiffs', FLSA Collective Plaintiffs', and Class Members' employment.

iv.     _Defendants' Single Integrated Enterprise_

16.     The Restaurants are operated by Corporate Defendant CW jointly with and through its subsidiaries, included herein as JOHN DOE CORPORATIONS 1-100, as a single integrated enterprise. The Restaurants are commonly owned and managed by Individual Defendant MICHAEL DORF, and Defendant CW. The Restaurants are jointly advertised on their website: https://citywinery.com/about-us/timeline. Specifically, the Restaurants are engaged in related activities and share common management, common ownership, and a common business purpose:

      i.     Plaintiffs, and similarly situated workers, regardless of their location of work, were instructed to contact Defendants' shared payroll department located at Defendants' shared Headquarters at 25 11th Ave, New York, NY 10011. For example, employees, no matter the location of their work, were provided the same phone number and contact address for purposes of resolving payroll questions.

     ii.     Employees were interchanged on an as needed basis among the locations. On numerous occasions throughout Plaintiff LUGO's employment, Defendants required him to work shifts at a second location as needed.

iii.    Plaintiff RAY was also interchanged among the locations and regularly worked at both the City Winery Pier 57 location and at the City Winery Vineyard location.

iv.    The Restaurants are all commonly advertised on the landing page of Defendants' website (https://citywinery.com/), as well as the timeline page (https://citywinery.com/about-us/timeline). *See* **Exhibits A and B**.

v.    The Restaurants are jointly owned by Individual Defendant DORF, as shown on the "Our Story" page of Defendants' website (https://citywinery.com/about-us/our-story). *See* **Exhibit C**. Additionally, the "Learn More" button on this page directs to Individual Defendant DORF's personal website, which contains a biography and a timeline describing his founding of Defendants' City Winery enterprise                                    (https://michaeldorf.com/biography/); (https://michaeldorf.com/career-timeline/). *See* **Exhibits D and E**.

vi.    Multiple articles and internet sources note the common ownership of the Restaurants by Individual Defendant DORF, including Individual Defendant DORF's Wikipedia page, *see* **Exhibit F**.

vii.    Defendants collectively post job openings for all Restaurants on a single Harri profile (https://harri.com/city-winery-international), which can be reached by clicking the "Join Our Team" button on the "Careers" page of Defendants' website (https://citywinery.com/about-us/careers). *See* **Exhibit G**.

viii.    At all times, Defendants utilized a centralized human resources department among the Restaurants. In an article by Hispanic Executive, Defendants' current Vice President of Human Resources, Nicole Sanchez reveals that:

      a.   Her focus as Defendants' Vice President of Human Resources is to ensure compliance of Defendants' policies across all their Restaurants;

      b.   She manages human resources for all the Restaurants working out of Defendants' centralized headquarters in New York as well as frequently personally visiting all Restaurants and meeting with their management teams;

      c.   Defendants' "learning and development department" ensures that all of Defendants' new employees are uniformly trained and educated on Defendants' policies, missions, and values.

*See* **Exhibit H**.

ix.    The Restaurants utilize a centralized gift card system whereby all City Winery gift cards are redeemable at all Restaurants. *See* **Exhibit I**.

x.    All Restaurants source their wine-manufacturing grapes from the same sources. *See* **Exhibit J**.

xi.    Defendants' advertise all the Restaurants on the Restaurants' collective YouTube account (https://www.youtube.com/@CityWineryVideos). *See* **Exhibit K**.

17.    Individual Defendant MICHAEL DORF and Defendant CITY WINERY, LLC are listed on the liquor licenses for all New York Restaurants. *See* **Exhibit L**. Individual Defendant MICHAEL DORF is also listed on the liquor license for the remaining Restaurants, either directly or indirectly as the operating officer of the relevant Corporate Defendant that is the direct licensee to each Restaurant. *See* **Exhibit M**.

18.    Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations  and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* **Exhibit N -** New York State Liquor Authority Handbook for Retail Liquor Licensees. Because the Individual Defendant is the liquor licensee for the New York Restaurants, the Individual Defendant is required by New York State law to personally ensure all New York Restaurants comply with the above 15 requirements. Specifically:

> "You as the licensee are responsible for the activities of employees and patrons in all parts of the licensed premises (even if you are not always physically present) to ensure that the business is operating in accordance with the ABCL. The following are common issues faced by retailers that could subject you to disciplinary action if you do not meet your responsibilities as a licensee."

**Exhibit N**.

19.    Therefore, in order for the Individual Defendant to comply with his legal responsibilities as a licensee, he is required to visit the premises and conduct regular internal auditing of the operations of the New York Restaurants.

20.     As the liquor licensee for the New York Restaurants, the Individual Defendant is required by New York State law to (i) personally impose a common management and common control of labor relations upon the Restaurants, and (ii) comply with all state and local laws, including the New York Labor Law. Failure to do so would be in violation of Defendants' liquor license agreements and the provisions of the New York State Alcoholic Beverage Control Law which could result in disciplinary action by the New York State Liquor Authority, including arrest or fines. *See* **Exhibit N**; *see also* Chapter 478 of the Laws of 1934.

21.     At all relevant times, the Individual Defendant complied with the New York State Alcoholic Beverage Control Law and the provisions of their liquor license agreements by personally controlling the operations of the New York Restaurants, sufficiently supervising their employees, and maintaining adequate books and records of the New York Restaurants.

22.     As the direct or indirect liquor licensee of the non-New York Restaurants, the Individual Defendant is required to abide by similar state and local laws, regulations, provisions, and agreements and to impose similar common management and control of the non-New York Restaurants as a result of Defendants' liquor license agreements in these States. At all relevant times, the Individual Defendant complied with all relevant liquor licensing laws, regulations, provisions, and agreements by personally controlling the operations of the non-New York Restaurants, sufficiently supervising their employees, and maintaining adequate books and records of the non-New York Restaurants.

23.     Although Plaintiffs did not work at all of the Restaurants, all Defendants and Restaurants are appropriately named in this Complaint because they were operated as a "single integrated enterprise." As illustrated above, all the Restaurants share common ownership, interrelation of operations, centralized control of labor relations, and common management. The

Restaurants share numerous commonalities, that classify them as a "single integrated enterprise," including but not limited to, commonly implementing through top-down management identical illegal wage and hour policies and interchangeability of employees. Consequently, all Defendants are properly named on the basis of their outstanding liability to the similarly situated employees for whom Plaintiffs seek to represent.

24.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and all regulations thereunder.

25.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, and barbacks, among others) employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

27.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs were tipped employees who have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiffs and FLSA Collective all wages owed due to: (i) time shaving, (ii) invalid tip credit deductions, and (iii) retention of gratuities. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

28.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – MULTI-STATE

29.     Plaintiffs bring claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former "front-of-house" non-exempt employees (including but not limited to servers, bussers, food runners, bartenders, and barbacks, among others) employed by Defendants within the statutory periods of the 9 relevant jurisdictions (six years under the NYLL, three years under the PMWA, etc.), between the earliest date applicable in each State and the date of the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

30.     To the extent deemed necessary by the Court, Plaintiffs may designate subclasses for each of the 9 States where Defendants employed Class Members.

31.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

33.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices by Defendants, as alleged herein, including: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid minimum and overtime wages due to invalid tip credit deductions, (3) illegal tip retention, and (4) wage statement and wage notice violations. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34.     Defendants failed to pay Plaintiffs and Class Members the proper minimum wage. Defendants were not entitled to claim any tip credits from their wages because Defendants failed to meet the statutory requirements under all Relevant State Wage and Hour Laws. Plaintiffs and Class Members suffered from Defendants' failure to pay minimum and overtime wages due to Defendants' invalid tip credit deductions because Defendants (i) failed to provide the notices required under the RSWHL to Plaintiffs and Class Members; (ii) impermissibly required the Plaintiffs and Class Members to perform non-tip producing side work for continuous periods of time exceeding 30 minutes; (iii) impermissibly required Plaintiffs and Class Members to perform non-tip producing side work for more than 20 percent of their worked time each week; and (iv) illegally retained Plaintiffs' and Class Members' earned gratuities.

35.    Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

36.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

37.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.    Defendants and other employers throughout the nation violate the Relevant State Wage and Hour Laws, and other state laws. Currently working employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

i.    Whether Defendants employed Plaintiffs and the Class Members within the Relevant State Wage and Hour Laws as relevant to them;

ii.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

iii.    Whether Plaintiffs and Class Members were properly classified as non-exempt;

iv.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class Members for their work;

v.    Whether Defendants properly notified Plaintiffs and Class Members of their hourly rates and overtime rates;

vi.    Whether Defendants paid Plaintiffs and Class Members the proper wages for all hours worked;

vii.    Whether Defendants properly provided notice to Plaintiffs and Class Members that Defendants were deducting tip credits from their wages;

viii.    Whether Defendants illegally retained portions of tips earned by Plaintiffs and Class Members;

ix.    Whether Defendants accurately tracked the amount of tips earned by Plaintiffs and Class Members each day and maintained records thereof;

x.    Whether Defendants required Plaintiffs and Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

xi.    Whether Defendants required Plaintiffs and Class Members to engage in non-tipped duties for over 20% of their total hours worked each workweek;

xii.    Whether Defendants deducted the proper amount of tip credits from Plaintiffs and Class Members for each payment period under the Relevant State Wage and Hour Laws as related to them; and

xiii.    Whether Defendants provided proper tip credit notices, at dates of hiring and annually thereafter, to Plaintiffs and Class Members.

## **STATEMENT OF FACTS**

i.    *Summary of Plaintiffs' Employments*

a.    *Plaintiff LUGO*

40.    In or around September 2022, Plaintiff LUGO was hired by Defendants to work as a Bartender for Defendants' City Winery Grand Central location at 89 E. 42nd Street Vanderbilt Hall; New York, NY 10017. Plaintiff worked for Defendants until around July 2023.

41.     For the first three months of employment, Plaintiff LUGO went through training and was paid by Defendants at the prevailing New York State minimum hourly wage rate of $15.00 per hour. Throughout the remainder of his employment, Plaintiff LUGO was paid by Defendants at tipped credit hourly wage rate of ten dollars ($10.00) per hour. FLSA Collective Plaintiffs and Class Members were similarly paid by Defendants at tipped credit wage rates below the prevailing minimum wage rates of their relevant jurisdictions.

42.     Because Defendants' Restaurants are live venues, the volume of Defendants' business fluctuates. As a result, Plaintiff LUGO's schedule varied each week throughout his employment. At all relevant times, Plaintiff LUGO was scheduled to work between six (6) to ten (10) hours per day and between two (2) to seven (7) days per week, for a total of between twelve (12) to seventy (70) hours per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled by Defendants to work fluctuating schedules of similar hours.

*b.  Plaintiff RAY*

43.     In or around September 2020, Plaintiff RAY was hired by Defendants to work as a Bartender and a Server for Defendants' City Winery Vineyard location at 233 West Street, New York, NY 10013. Plaintiff RAY also received training at Defendants' City Winery Pier 57 location at 25 11th Avenue; New York, NY 10011. Plaintiff RAY worked for Defendants until around June 2021.

44.     At all times, Plaintiff RAY was paid by Defendants at the prevailing New York State minimum hourly wage rate of ten dollars ($10.00) per hour. FLSA Collective Plaintiffs and Class Members were similarly paid by Defendants at tipped credit wage rates below the prevailing minimum wage rates of their relevant jurisdictions.

45.    Because Defendants' Restaurants are live venues, the volume of Defendants' business fluctuates. As a result, Plaintiff RAY's schedule varied each week throughout her employment. At all relevant times, Plaintiff RAY was scheduled to work between six (6) to ten (10) hours per day and between two (2) to seven (7) days per week, for a total of between twelve (12) to seventy (70) hours per week. Plaintiff RAY would work at the City Winery Vineyard approximately two days per week and at the main location, the City Winery Pier 57 location, approximately four to six times per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled by Defendants to work fluctuating schedules of similar hours and across multiple locations.

  c.  *Plaintiff DANNHEISER*

46.    In or around September 2022, Plaintiff DANNHEISER was hired by Defendants to work as a Server for Defendants' City Winery Philadelphia location at 990 Filbert Street, Philadelphia, PA 19107. Plaintiff DANNHEISER worked for Defendants until December 15, 2023.

47.    Throughout her employment, Plaintiff DANNHEISER was paid by Defendants at a tipped credit hourly wage rate of four dollars ($4.00) per hour. FLSA Collective Plaintiffs and Class Members were similarly paid by Defendants at tipped credit wage rates below the prevailing minimum wage rates of their relevant jurisdictions.

48.    Because Defendants' Restaurants are live venues, the volume of Defendants' business fluctuates. As a result, Plaintiff DANNHEISIER's schedule varied each week throughout her employment. At all relevant times, Plaintiff DANNHEISIER was scheduled to work between six (6) to ten (10) hours per day and between two (2) to seven (7) days per week, for a total of

between twelve (12) to seventy (70) hours per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled by Defendants to work fluctuating schedules of similar hours.

ii.    _Plaintiffs' Invalid Tip Credit Claims_

49.    At all relevant times, Defendants deducted tip credits from the wages of Plaintiffs, FLSA Collective Plaintiffs, and Class Members as permitted by the FLSA and the Relevant State Wage and Hour Laws of their jurisdictions.

50.    However, Defendants were not entitled to claim any tip credit allowances from the wages of Plaintiffs, FLSA Collective Plaintiffs, and Class Members under the FLSA and all RSWHL because Defendants: (i) failed to properly provide tip credit notice at hiring; (ii) claimed tip credits for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time exceeding thirty (30) minutes and for more than 20% of their workweeks; and (iii) unlawfully retained employees' tips and gratuities.

51.    Throughout their respective employment periods, Plaintiffs were required to engage in significant amounts of non-tipped work exceeding twenty percent of their shifts.

52.    For Plaintiff LUGO, a Bartender, this non-tipped work consisted of (i) preparing the bar for service, (ii) preparing garnishes, mixes, and ingredients for beverages, (iii) general cleaning of the bar,  (iv) expediting food orders, (v) cleaning and polishing silverware and glassware, (vi) preparing syrup, and (vii) stocking plateware, glassware, and silverware, among other duties.

53.    For Plaintiff RAY, a Bartender and Server, this non-tipped work consisted of (i) preparing the bar for service, (ii) cleaning and polishing silverware and glassware, (iii) doing roll

ups, (iv) general cleaning of the bar, and (iv) stocking plateware, glassware, and silverware, among other duties.

54.     For Plaintiff DANNHEISER, a Server, this non-tipped work consisted of (i) preparing the restaurant for service, (ii) creating silverware roll-ups, (iii) cleaning and polishing silverware and glassware, (iv) cleaning tables, (v) stocking plateware, glassware, and silverware, and (vi) general cleaning of the restaurant, among other duties.

55.     Throughout their respective employment periods, although Plaintiffs were paid at hourly tip credit rates for all hours worked, they were required by Defendants to engage in the above non-tipped work for (i) over 20% of their total hours worked and (ii) continuous periods of time exceeding thirty (30) minutes. Such excessive non-tipped side invalidates Defendants' tip credit deductions.

56.     At all relevant times, Defendants required FLSA Collective Plaintiffs and Class Members to perform similar non-tipped work for similar amounts of time while subjecting them to tip credit deductions.

57.     Additionally, as will be detailed further below, throughout Plaintiffs' respective employment periods, Defendants regularly retained tips and gratuities from the wages of Plaintiffs, FLSA Collective Plaintiffs, and Class Members—tips which were intended only for tipped employees. Such unlawful retention of the tips and gratuities invalidates Defendants' tip credit deductions.

58.     Further, Plaintiff and Class Members never received any notices from Defendants that Defendants were claiming a tip credit on their weekly compensation. They were never told by Defendants that Defendants were deducting tip credits from their wages, nor did they ever receive proper notice by Defendants as to the amount of tip credit allowances Defendants deducted for

each payment period during their employment. Plaintiffs and Class Members also did not have access to tip pool records.

59.    As a direct result of Defendants' invalid tip credit deductions, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were paid below the prevailing minimum wages of their individual jurisdictions in violation of the FLSA and the RSWHL.

60.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiffs', FLSA Collective Plaintiffs', Class Members' wages, in violation of the FLSA and all RSWHL.

iii.    *Plaintiffs' Unlawful Tip Retention Claims*

61.    At all relevant times, Defendants unlawfully retained tips and gratuities from the wages of Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and all RSWHL.

62.    Throughout their respective employment, Plaintiffs were routinely required to work at private buyouts and events. Defendants' Restaurants are luxurious venues with steep rental prices. For example, the minimum price to buy out one of Defendants' locations in New York is $40,000 (*see* **Exhibit O**), and the minimum for a peak hour wedding at Defendants' Philadelphia location, where Plaintiff DANNHEISER worked, is $25,000 (*see* **Exhibit P**). An average 20% tip on these minimums would be $8,000 and $5,000, respectively.

63.    In return for Plaintiffs, FLSA Collective Plaintiffs, and Class Members services at these private buyouts and events, Defendants' clients leave them gratuities, which are usually several thousands of dollars due to the significant prices of the buyouts and events. However, despite receiving these enormous gratuities, Defendants failed to appropriate the full amount, and

sometimes any amount, of these gratuities to Plaintiffs, FLSA Collective Plaintiffs, and Class Members.

64.    Further, Defendants failed to provide customers with an explicit written statement that any or all portions of surcharges, service fees, and gratuities left for the service staff would actually be retained by Defendants. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

65.    At all relevant times, Defendants intentionally obfuscated all data regarding the tip pool. At all relevant times, Defendants never provided tipped employees with any information concerning their tip earnings from buyouts and events, including any tip sheets, tip earning logs, tip distribution logs, billing statements, gratuity disclosures, or agreements.

66.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips and gratuities from Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and RSWHL.


iv.    *Plaintiffs' Time Shaving Claims*

67.    At all relevant times, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members wages for all hours they were required by Defendants to work, in violation of the FLSA and all RSWHL.

68.    At all relevant times, Defendants subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to working off-the-clock, either before or after their shifts.

69.    Throughout Plaintiff LUGO's employment, Defendants required Plaintiff LUGO to perform additional off-the-clock work after his shifts ended. Approximately three times per

week, Plaintiff LUGO's managers would intentionally wait until Plaintiff LUGO clocked out at the end of his shift, then approach him and have him stay 30 minutes to either (i) perform additional cleaning or (ii) attend a meeting with management.

70.    Defendants similarly subjected FLSA Collective Plaintiffs and Class Members, who worked at Plaintiff LUGO's location, to this post-shift time shaving policy.

71.    Throughout Plaintiff RAY's employment, Defendants required Plaintiff RAY to arrive approximately 20 minutes prior to the start of her shift to perform additional off-the-clock work side work in preparation for her shift. This occurred for each shift Plaintiff RAY worked, regardless of where she was working. Because this additional side-work was performed off-the-clock, Plaintiff RAY was not compensated for this time.

72.    Defendants similarly required FLSA Collective Plaintiffs and Class Members, who worked at both locations where Plaintiff RAY worked to this perform unpaid pre-shift work off-the-clock.

73.    Throughout Plaintiff DANNHEISER's employment, Defendants required Plaintiff DANNHEISER to perform off-the-clock work before her shifts began. Approximately every day, Plaintiff DANNHEISER was required to arrive to work 20 minutes prior to her scheduled shift start times in order to perform unpaid off-the-clock non-tipped work for this entire 20 minutes. Although Plaintiff DANNHEISER was required to arrive to work 20 minutes early, she was not permitted to clock in until her scheduled start time. Therefore, this time worked was always unpaid.

74.    Defendants similarly subjected FLSA Collective Plaintiffs and Class Members, who worked at Plaintiff DANNHEISER's location, to this pre-shift time shaving policy.

75.     Defendants knowingly and willfully operated their business with a policy of failing to pay wages for all required hours worked to Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and all RSWHL.

v.      _Plaintiffs' Invalid Wage Statements and Wage Notices Claims_

76.     At all relevant times, Defendants failed to provide Plaintiffs and Class Members in the following jurisdictions with proper wage notices, in violation of the following statutes:

     i.      California – Cal. Lab. Code § 2810.5;

     ii.     District of Columbia – DC Code § 32-1008(a)(2)(B)(c)

     iii.    Illinois - Ill. Admin. Code tit. 56, § 300.630 and 820 ILCS 115/10(a)

     iv.     Missouri – RSMo §§ 290.080; 290.612 ;

     v.      New York – NYLL §195(1);

     vi.     Pennsylvania - 43 Pa. Stat. § 260.4; and

     vii.    Tennessee – Tenn. Code Ann. § 50-2-101

(collectively, the "Wage Notice Laws" or "WNL").

77.     At all relevant times, Defendants failed to provide Plaintiffs and Class Members in the following jurisdictions with proper wage statements, in violation of the following statutes:

     i.      California – Cal. Lab. Code § 226;

     ii.     District of Columbia – DC Code § 32-1008(a)(2)(B)(b);

     iii.    Illinois - 820 ILCS 115/10(b); 115/10(d);

     iv.     Massachusetts – M.G.L. c. 149, § 148;

     v.      Missouri – RSMo § 290.080;

     vi.     New York – NYLL §195(3); and

     vii.    Pennsylvania 34 Pa. Code § 231.36

(collectively, the "Wage Statement Laws" or "WSL").

78.    At all relevant times, Defendants failed to provide Plaintiffs and the relevant Class Members with wage notices at their times of hiring or as otherwise required by the applicable Wage Notice Laws.

79.    At all relevant times, Defendants failed to provide Plaintiffs and the relevant Class Members with accurate wage statements, because Defendants' wage statements did not reflect the true and total amount of hours these employees worked. Defendants' wage statements instead only reflected the amount of hours Defendants paid these employees for, which was always less than the actual amount of hours these employees worked due to Defendants' above time shaving policies. Wage statements that do not reflect the actual number of hours worked by employees do not satisfy the requirements of the WNL.

80.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and accurate wage statements (i) deprived Plaintiffs and Class Members of the ability to contest the pay provided by Defendants, (ii) allowed Defendants to hide their wrong-doing, and (iii) necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to Plaintiffs and Class Members, who are low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

81.    Had the wage statements Defendants provided to Plaintiffs and Class Members accurately listed the total number of hours Plaintiffs and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the WSL and WNL. The deprivation of these possibilities therefore constitutes an injury to Plaintiffs and Class Members.

82.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

83.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[4]

---

[4] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for this is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystubs provide gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures

84.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

85.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at *18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

---

required for accurate W2 calculation by referring to the pay stub."
https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

86.    Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

87.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

88.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in

employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

89.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

90.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

91.     Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs and Class Members were

irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2's to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

92.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by the WSL and WNL.

93.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in this litigation and has agreed to pay the firms a reasonable fee for its services if she prevails.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

## 29 U.S.C § 206

94.     Plaintiffs reallege and reaver all the foregoing paragraphs of this Class and Collective action Complaint as if fully set forth herein.

95.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a).

96.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

97.      At all relevant times, Defendants had a gross annual revenue in excess of $500,000.00.

98.     At all relevant times, Defendants had a policy and practice of illegally retaining tips from Plaintiffs and FLSA Collective Plaintiffs.

99.     At all relevant times, Defendants had a policy and practice of failing to pay the federal minimum wage to Plaintiffs and FLSA Collective Plaintiffs due to invalid tip credit deductions.

100.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs for all hours Defendants required them to work.

101.    At all relevant times, Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them proper wages in the lawful amounts for all hours worked and unlawfully retaining their tips.

102.    Records, if any exist, concerning the number of hours worked and tips earned by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiffs will then seek leave of Court to amend this Complaint to set forth the precise amount due.

103.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

104.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

105.     Due to the intentional, willful, and unlawful acts of the Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and tips, and equal amounts as liquidated damages.

106.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

## VIOLATIONS OF THE RELEVANT STATE WAGE AND HOUR LAWS, WAGE NOTICE LAWS, AND WAGE STATEMENT LAWS

**(ON BEHALF OF AND AS APPLICABLE TO PLAINTIFFS AND CLASS MEMBERS)**

107.     Plaintiffs reallege and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective action Complaint as if fully set forth herein.

108.     At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the Relevant State Wage and Hour Laws applicable to them.

109.     Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them their proper compensation due to Defendants' illegal tip retention policies and practices, in violation of the Relevant State Wage and Hour Laws applicable to them.

110.     Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them the proper compensation at rates of not less the minimum wages of the jurisdictions they were employed within, due to policies and practices of deducting invalid tip credits.

111.     Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them the full amount of their earned compensation due to policies and practices of time shaving, in violation of the Relevant State Wage and Hour Laws applicable to them.

112.    Defendants knowingly and willfully violated the rights of Plaintiffs and Class Members who are protected by the Wage Statement Laws, by failing to provide them with pay stubs or wage statements which meet all requirements of the Relevant Wage Statement Laws of their jurisdictions.

113.    Defendants knowingly and willfully violated the rights of Plaintiffs and Class Members who are protected by the Wage Notice Laws, by failing to provide them with wage notices as required by the relevant Wage Notice Laws of their jurisdictions.

114.    Due to Defendants' violations of the Relevant State Wage and Hour Laws, Wage Notice Laws, and Wage Statement Laws, Plaintiffs and Class Members are entitled to recover from Defendants (as applicable to each individual) their unpaid compensation, unlawfully retained tips, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, applicable Relevant State Wage and Hour Laws, applicable Wage Notice Laws, and applicable Wage Statement Laws;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum wages due to invalid tip credit deductions, due under the FLSA and all applicable Relevant State Wage and Hour Laws;

d.  An award of unpaid wages due to Defendants' improper tip retention, due under the FLSA and all applicable Relevant State Wage and Hour Laws;

e.  An award of unpaid wages due to Defendants' illegal time shaving policies and practices, due under the FLSA and all applicable Relevant State Wage and Hour Laws;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the applicable Relevant State Wage and Hour Laws;

h.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees;

i.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiffs as Representatives of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: June 18, 2025                          Respectfully submitted,
       New York, New York

                                        By:    */s/ C.K. Lee*
                                                C.K. Lee, Esq. (CL 4086)

                                                  **LEE LITIGATION GROUP, PLLC**
                                                  148 West 24th Street, 8th Floor
                                                  New York, NY 10011
                                                  Tel.: 212-465-1188
                                                  Fax: 212-465-1181

                                                  *Attorneys for Plaintiffs,*
                                                  *FLSA Collective Plaintiffs,*
                                                  *and the Class*