UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                  :
JESUS LUGO et al.,                                                :
                                                                  :
                                Plaintiffs,                       :
                                                                  :          25-CV-5135  (JMF)
               -v-                                                :
                                                                  :          OPINION AND ORDER
CITY WINERY, LLC et al.,                                          :
                                                                  :
                                Defendants.                       :
                                                                  :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiffs Jesus Lugo, Anna Marie Ray, and Jackie Dannheiser bring claims, on behalf of

themselves and others similarly situated, against their former employer, City Winery, LLC; its

corporate subsidiaries;[1] and its owner and operator Michael Dorf (collectively, "City Winery"),

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; state labor laws,

including the New York Labor Law ("NYLL"), N.Y. LAB. LAW § 650 *et seq.*; and state common

law.  ECF No. 22 ("FAC"), at ¶¶ 1-18, 97-140.  Specifically, Plaintiffs claim that City Winery

violated federal and state law by improperly deducting tip credits from their wages, *id.* ¶¶ 53-64;

unlawfully retaining their tips, *id.* ¶¶ 65-71; engaging in "time-shaving" by failing to pay them

for all hours worked, *id.* ¶¶ 72-78; and failing to provide proper wage statements, *id.* ¶¶ 79-82.

City Winery now moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to

dismiss all claims.  ECF No. 30; *see* ECF No. 31 ("Defs.' Mem."), at 1.  For the reasons that

follow, City Winery's motion to dismiss is GRANTED in part and DENIED in part.

---

[1]    The subsidiaries are City Vineyard, LLC; City Winery Grand Central, LLC; City Winery
NY- Pier 57, LLC; and John Doe Corporations 1-100.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the First Amended Complaint (the "Complaint") and assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Michael Dorf founded City Winery, LLC in New York City in 2008. FAC ¶ 18(vi). "[W]ith and through its subsidiaries," the company now owns and operates at least thirteen restaurants under the City Winery name in various states, including in New York, Georgia, Massachusetts, Pennsylvania, Missouri, and Tennessee. *Id.* ¶ 4. The Complaint alleges that City Winery, LLC exercises control over all City Winery restaurants by centralizing marketing efforts, human resources, employment decisions, and inspections. *Id.* ¶¶ 11-18. As relevant here, Dorf retains the power to hire and fire personnel, influence employee scheduling, determine the rate and method of employee pay, supervise employees, and receive employee complaints across City Winery establishments. *Id.* ¶ 11-18. City Winery, LLC, also manages human resources for all City Winery restaurants through a Human Resources Department in New York, which is run by the current Vice President of Human Resources, Nicole Sanchez. *Id.* ¶ 18(x); *see also* ECF No. 22-8 (Article about Sanchez and copy of Sanchez' LinkedIn).

Plaintiffs previously worked as "front-of-house" employees at four City Winery establishments in New York and Pennsylvania. *Id.* ¶¶ 43-52.[2] They bring this action on behalf of themselves and a purported class and collective consisting of all "front-of-house" employees who work or worked for City Winery restaurants and event spaces nationwide. *Id.* ¶ 28. As

---

[2]    Specifically, Lugo worked for City Winery's Grand Central and Pier 57 locations in New York from approximately September 2022 through July 2023, *id.* ¶ 43; Ray worked for City Winery's Pier 57 and City Vineyard locations in New York from approximately September 2020 through June 2021, *id.* ¶ 46; and Dannheiser worked at City Winery Philadelphia from approximately September 2022 through September or October 2023, *id.* ¶ 49.

relevant here, they allege that City Winery engaged in a variety of wage and labor violations across all of its locations.  For one, City Winery claimed an improper "tip credit" to offset their obligation to pay Plaintiffs the full minimum wage required under state and federal law.  *Id.* ¶¶ 53-64.  Plaintiffs assert that City Winery restaurants were not entitled to claim a tip credit because Plaintiffs were not afforded proper notice of City Winery's tip-credit procedures, *id.* ¶ 54, and were regularly required to perform non-tipped work that exceeded twenty percent of their time worked during each workweek.  *Id.* ¶ 59.  This "non-tipped work" included cleaning, polishing, food preparation, rolls ups, and stocking.  *Id.* ¶¶ 56-58.  Plaintiffs further allege that City Winery regularly engaged in a practice called "time-shaving" by failing to pay them for all the hours they were required to work.  *Id.* ¶¶ 73-78.  More specifically, Plaintiffs were consistently asked to work "off-the-clock" before or after their shifts.  *Id.* ¶¶ 73-78.  For instance Lugo's managers would intentionally wait until Lugo clocked out at the end of a shift before requesting that he stay an extra half hour to perform additional cleaning or meet with management.  *Id.* ¶ 74; *see also id.* ¶¶ 75-76.

The Complaint also alleges that City Winery failed to distribute some or all of the tips earned by Plaintiffs at private events hosted at City Winery restaurants.  *Id.* ¶ 66.  City Winery's clients would leave Plaintiffs gratuities of up to twenty percent, yet City Winery "failed to convey the full amount, and sometimes any amount, of these gratuities" to Plaintiffs.  *Id.* ¶ 67.  City Winery's tip practices at these events lacked transparency.  *Id.* ¶¶ 69-70; ECF No. 22-17 (employee reviews describing lack of transparency with tips).  City Winery "intentionally obfuscated all data regarding the tip pool," never providing "tipped employees with any information concerning their tip earnings from buyouts and events, including any tip sheets, tip earning logs, tip distribution logs, billing statements, gratuity disclosures, or agreements."  *Id.*

3

¶ 69. Moreover, at all relevant times, City Winery failed to provide Plaintiffs with wage notices at their times of hiring and accurate wage statements. *Id.* ¶¶ 79-82.

## DISCUSSION

Plaintiffs bring claims under the FLSA, 29 U.S.C. § 201 *et seq.,* and state law against City Winery for the (1) unlawful deduction of tip credits from their wages, *id.* ¶¶ 53-64; (2) for retaining tips from Plaintiffs' wages, *id.* ¶¶ 65-71; (3) for engaging in "time-shaving" by failing to pay Plaintiffs for all hours worked, *id.* ¶¶ 72-78; and (4) for failing to provide proper wage statements under various state laws. *Id.* ¶¶ 1-18, 79-82. City Winery moves to dismiss all claims, arguing that Plaintiffs lack standing to bring their wage statement claims, that the Court lacks personal jurisdiction over out-of-state Defendants and Plaintiffs, that Plaintiffs' claims are time barred, and that Plaintiffs fail to state a claim upon which relief can be granted.

At the outset, the Court limits its review to the claims of the named Plaintiffs — Lugo, Ray, and Dannheiser — and declines to consider the claims of members of the putative collective action and class. Where, as here, named plaintiffs bring "state law claims that may not be brought by [a] named plaintiff, but may be brought by putative class members, courts typically address only the state law claims of the named plaintiff at the motion to dismiss stage and do not address the standing and merits arguments with respect to the additional state law claims." *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021); *see Gutierrez v. Lemonade, Inc.*, No. 21-CV-7070 (JGK), 2022 WL 3214852, at *3 (S.D.N.Y. Aug. 9, 2022) ("On a motion to dismiss prior to class certification, the focus of the Court's inquiry is on the claims of the named plaintiffs."); *see also In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (collecting cases). If a court dismisses the claims of all named plaintiffs as to a particular cause of action, the corresponding claims of putative class or collective action

4

members must also be dismissed.  *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013) ("[T]he jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." (internal quotation marks omitted)); *Martin v. New Am. Cinema Grp., Inc.*, No. 22-CV-5982 (JLR), 2023 WL 2024672, at *9 (S.D.N.Y. Feb. 15, 2023) (dismissing class action claims when the named plaintiff failed to state a claim prior to class certification).

With that, the Court will address each argument in turn, beginning with the threshold issues of jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("[J]urisdiction [must] be established as a threshold matter").

## A.  Standing

City Winery first moves to dismiss Plaintiffs' claims under state laws requiring proper wage notices and statements for lack of standing under Article III of the Constitution.  *See* Defs.' Mem. 20-23.  To have standing to bring a claim in federal court, a plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Significantly, that requires a plaintiff to prove more than a defendant's mere violation of a statutory right.  *See id.* at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original).  More specifically, a plaintiff must allege a "concrete"

5

harm that constitutes or bears a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms." *Id.* at 417 (citing *Spokeo*, 578 U.S. at 340-41).

Applying these principles, courts have held that plaintiffs bringing wage notice claims must allege — and ultimately show — "some causal connection between the lack of accurate notices and the downstream harm" to establish standing. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024); *see, e.g.*, *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) ("Defendant's violation [of wage notice and statement law] 'resulted in the underpayment of wages,' and monetary injury is a concrete harm sufficient for purposes of Article III standing."); *Ramirez v. Exclusive Mgmt. Sol. Grp., Inc.*, No. 24-CV-1786 (MMG), 2025 WL 3456654, at *6 (S.D.N.Y. Dec. 2, 2025) (acknowledging injuries stemming from the wage notice and wage statement violations, including, *inter alia*, an inability to contest wrongdoing and the reduction of social security benefits). Plaintiffs satisfy that requirement here, as they allege that the failure to provide them with wage notices and accurate wage statements "ensured Defendants' ability to further delay providing proper compensation to Plaintiffs and Class Members," FAC ¶ 83; "hide their responsibility and deprive employees of timely compensation" *id.*; and "reduce[d] the employee earnings that the employer later report[ed] to the IRS" on W-2 forms, which in turn "reduce[d] the amount of social security benefits available to the employee," *id.* ¶¶ 86-88. Accepting these allegations as true, the Court concludes that Plaintiffs have therefore alleged they have "a concrete interest [in accurate wage notices and statements] and [are] not simply policing legal infractions in the abstract." *Guthrie*, 113 F.4th at 310. Thus, City Winery's standing argument fails.

**B.  Personal Jurisdiction**

Next, City Winery argues that the Court lacks personal jurisdiction over out-of-state Defendants and out-of-state Plaintiffs, including Dannheiser and other putative members of both the class and collective action.  Defs.' Mem. 15-20.  The Court will address each in turn.

**1.  Out-of-State Defendants**

As to Defendants, there are "two categories of personal jurisdiction: general and specific personal jurisdiction.  General, all-purpose jurisdiction permits a court to hear any and all claims against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (cleaned up).[3]  A plaintiff bears the burden of establishing personal jurisdiction.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  "'Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.'" *Id.* (quoting *Ball*, 902 F.2d at 197).

Plaintiffs make a two-step argument for why the Court may exercise personal jurisdiction over the out-of-state Defendants.  First, they assert that the Court has general jurisdiction over

---

[3]      In addition, the exercise of personal jurisdiction must satisfy the requirements of due process.  *Calder v. Jones*, 465 U.S. 783, 788 (1984).  Here, Defendants do not make any argument that exercising personal jurisdiction would violate due process.

City Winery LLC — even though it is a foreign limited liability company — because its principal place of business is in New York. *See* FAC ¶¶ 5; Pls.' Mem. 16-17. Second, they contend that all Defendants, including the out-of-state corporate subsidiaries, constitute a single integrated enterprise centrally controlled through City Winery, LLC, and that the Court may thereby exercise general jurisdiction over all Defendants. FAC ¶ 7; Pls.' Mem. 16-17. The Court addresses each step in turn.

First, a company's principal place of business is determined using the "nerve center" test, which asks where the company's activities are directed, controlled, and coordinated. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Generally, that is where the company's headquarters is located, "provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the [company] holds its board meetings." *Id.* at 93; *GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC*, No. 24-CV-5645 (ALC), 2025 WL 919652, at *4 (S.D.N.Y. Mar. 26, 2025) ("[T]he test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed.").

Applying that test here, the Court concludes that City Winery, LLC's principal place of business is indeed in New York. Contrary to Defendants' assertions, Plaintiffs allege that City Winery, LLC's connections to New York are far more substantial than "merely owning franchises or restaurants in New York." Defs.' Mem. 17. The Complaint alleges, among other things, that:

- Dorf founded City Winery LLC in New York and that he continues to assert managerial control over all restaurants. *Id.* ¶¶ 11, 18(vi); ECF No. 22-4.

- City Winery LLC's headquarters are located at 25 11th Avenue, in New York, New York. FAC ¶¶ 18(i), (ix), (x)(b).

8

- Employees, regardless of their location of work, are instructed to contact a shared City Winery payroll department located at 25 11th Ave in New York, New York. *Id.* ¶ 18(i)

- The City Winery Careers page shows that all the employee openings are listed under a single address: "City Winery International 25 11th Avenue, New York, NY 10011 | 14 Locations." *Id.* ¶ 18(viii)

- There is a central Human Resources Department run by City Winery LLC's current Vice President of Human Resources, Nicole Sanchez, based out of New York. Moreover, Sanchez has publicly stated that, "[a]s an HR leader catering to each market, I analyze what it takes to keep our employees motivated. That's not done by just being *based out of New York in an office*, but by visiting each location, speaking with teams, and understanding what they need to succeed." *Id.* ¶ 18(x)(c) (emphasis added); *see also* ECF No. 32 ("Sanchez Decl"), ¶ 1; ECF No. 22-8 (Article about Sanchez). Additionally, Sanchez's LinkedIn describes her role as lead of "the HR function for City Winery across seven states, 13 locations+/1500 employees," overseeing "all areas of human resources including employee relations, benefits administration, payroll, talent acquisition, and organizational development." FAC ¶ 18(xi); ECF No. 22-8, at 7 (Sanchez LinkedIn Profile).

At this stage, these allegations are sufficient to show that City Winery LLC's "nerve center" is in New York, and thus, that the Court has general jurisdiction over City Winery LLC. *Hertz*, 559 U.S. at 92-93.

In any event, even if Plaintiffs' allegations were insufficient to support general personal jurisdiction over City Winery LLC, they would suffice to establish specific personal jurisdiction. *See* Pls.' Mem. 19. "[A] federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted); *accord Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 272 (S.D.N.Y. Oct. 25, 2019). Because the "FLSA does not provide for nationwide service of process," *id.* at 273 (collecting cases), specific jurisdiction is thus governed by New York's long-arm statute, N.Y. C.P.L.R. § 302(a). It empowers New York courts to exercise jurisdiction over non-domiciliaries when the plaintiff's claims "aris[e] from" one of four specific kinds of contact with New York, including, as relevant here, when the defendant "transacts any business within the state." N.Y. C.P.L.R.

§ 302(a)(1).  "Transact[ing] business" is defined, in turn, as "purposeful activity — some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotations omitted).  "[T]he overriding criterion necessary to establish a transaction of business [cognizable under § 302(a)] is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted).  An injury arises from a defendant's New York business activity as long as "the [legal claim] is not completely unmoored from the [transaction]."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) ("*Licci II*") (internal quotation marks omitted).

Both requirements are easily met here.  Plaintiffs allege, and Defendants do not deny, that City Winery LLC provides managerial support to the New York branches of City Winery.  *See, e.g.*, FAC ¶ 18 (alleging, *inter alia*, that City Winery LLC manages payroll, event contracts, and human resources for the subsidiary entities); *id.* ¶¶ 9-10; 19-20 (alleging that Dorf exercises administrative and financial control over the subsidiaries, set the employment terms and conditions for Plaintiffs, received complaints from Plaintiffs, and regularly visits the premises to conduct internal auditing of the New York City Winery locations); *see generally* Sanchez Decl.  And Plaintiffs' claims are "not completely unmoored" from that managerial support, as they arise from, and relate to, City Winery's policies and the terms and conditions of their employment.  *Licci II*, 732 F.3d at 168-69 (internal quotation marks omitted).  In short, there is specific personal jurisdiction under New York's long-arm statute over City Winery LLC and Dorf.  Put simply, City Winery's business in New York supports the conclusion that they

10

"purposefully availed" themselves "of the privilege of doing business in [New York] and could foresee being haled into court there." *Id.* at 170 (internal quotation marks omitted). Thus, the first step of Plaintiffs' personal jurisdiction argument is sound.

At the second step, Plaintiffs contend that all Defendants, including the out-of-state corporate subsidiaries, "constitute a single integrated enterprise centrally controlled through City Winery, LLC," so the Court may exercise general jurisdiction over all Defendants. FAC ¶ 7; Pls.' Mem. 16-17.[4] The existence of a parent-subsidiary relationship is, in and of itself, an insufficient basis for finding *in personam* jurisdiction over the subsidiary. *See, e.g.*, *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). That said, a subsidiary may be found to be present in the jurisdiction of its parent under New York law "if the parent acts as its agent" or "if the subsidiary is a 'mere department' of its parent." *Larball Publ'g Co. v. CBS Inc.*, 664 F. Supp. 704, 706-07 (S.D.N.Y. 1987); *see, e.g.*, *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99-CV-10496 (CSH), 2002 WL 14363, at *2 (S.D.N.Y. Jan. 3, 2002) (collecting cases); *FIMBank P.L.C. v. Woori Fin. Holdings Co.*, 962 N.Y.S.2d 114, 115-16 (N.Y. App. Div. 1st Dep't 2013) (applying New York's mere department analysis when confronted with arguments that personal jurisdiction exists on the basis of a defendant's role in "a highly integrated enterprise"). New York courts consider four factors in determining whether

---

[4]    To the extent that Plaintiffs suggest that the "single integrated enterprise" test applies to the question of personal jurisdiction — as opposed to the question of statutory liability — there are reasons to be skeptical. *See, e.g.*, *Tese-Milner v. DeBeers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not encountered, and Plaintiff does not offer any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law."); *see also Mendez v. Pure Foods Mgmt. Grp., Inc.*, No. 14-CV-1515 (SRU), 2016 WL 183473, at *5 (D. Conn. Jan. 14, 2016) (collecting cases). The Court need not and does not decide the question, however, because, for the reasons discussed, Plaintiffs establish personal jurisdiction over the out-of-state Defendants regardless.

a subsidiary is a "mere department" of a parent for jurisdictional purposes: "first, 'common ownership' — which is 'essential'; second, 'financial dependency of the subsidiary on the parent corporation'; third, 'the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities'; and fourth, 'the degree of control over the marketing and operational policies of the subsidiary exercised by the parent.'" *Jazini,* 148 F.3d at 185 (quoting *Beech,* 751 F.2d at 120-22); *see, e.g.*, *Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492, 2017 WL 2987214, at *11 (S.D.N.Y. Feb. 13, 2017) (Nathan, J.).

Here, Plaintiffs allege facts to support all four factors and, thus, have made "a prima facie showing of jurisdiction" under a mere department theory. *Jazini*, 148 F.3d at 184. First, the City Winery defendants are commonly owned and managed by Dorf and City Winery LLC. FAC ¶¶ 18, 18(v-vii). Second, the payroll department is located in, and managed from, the New York headquarters, *id.* ¶ 18(i); Michael Dorf exercises the power to "determine the rate and method of pay," *id.* ¶ 11; and Dorf manages the contracts of the subsidiaries for events, *id.* ¶ 18(xv). Third, the Complaint alleges that corporate formalities are not observed as employees are interchanged between locations. *Id.* ¶ 18(ii). Finally, Plaintiffs allege a host of ways in which City Winery LLC asserts control over the marketing and operations of City Winery restaurants. For example, City Winery restaurants are advertised together on one website and one Youtube channel operated by City Winery LLC, *id.* ¶ 18(xiv); ECF No. 22-11 (City Winery, LLC, Youtube page); job postings are collectively posted on City Winery LLC's website, *id.* ¶ 18(viii); and City Winery LLC used a centralized human resources department that "implemented common policies and a common employee handbook," *id.* ¶ 18(x); *see also id.* (describing the role of the Vice President of Human Resources as ensuring compliance of City Winery's policies across all

12

Case 1:25-cv-05135-JMF    Document 40    Filed 03/17/26    Page 13 of 28

restaurants).  Taken together, these allegations are sufficient, at this stage, to establish that the out-of-state Defendants are mere departments of City Winery LLC.  Accordingly, the Court may exercise personal jurisdiction over them, and Defendants' motion on that score is denied.

### 2.  Out-of-State Class and Collective Action Members

As noted, City Winery also contends that the Court lacks personal jurisdiction over the claims of Dannheiser and putative class and collective action members residing outside of New York.  Defs.' Mem. 18-19.  This argument is based on *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017), in which the Supreme Court held that, in an aggregate mass tort action, a California state court lacked personal jurisdiction over the claims raised by non-resident plaintiffs against a non-Californian defendant.  *See* Defs.' Mem. 18-19.  Courts are divided on the questions of whether *Bristol-Myers* applies to FLSA collective actions[5] or state class actions[6] in federal court, and the

---

[5]    *Compare Schiller-Egles v. PromptCare Cos.*, No. 23-CV-6790 (KMK), 2025 WL 904331, at *6 (S.D.N.Y. Mar. 25, 2025) ("[T]here is a growing consensus, as the Third, Sixth, Seventh, and Eighth Circuits have held that *Bristol-Myers* precludes certification of a nationwide FLSA collective" (citing *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 387-88 (3d Cir. 2022); *Canaday v. Anthem Cos.*, 9 F.4th 392, 397 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 864-65 (8th Cir. 2021)), *and Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) (holding that *Bristol-Myers* does not preclude certification of a nationwide FLSA collective); *see also* Adam Drake, *The FLSA's* Bristol-Myers Squibb *Problem*, 89 FORDHAM L. REV. 1511, 1526 (2021) (observing "a nearly even split between the thirty-seven district courts that have addressed the issue" as of the date of publication); *Pettenato*, 425 F. Supp. 3d at 275 (collecting cases).

[6]    *Compare, e.g.*, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446-48 (7th Cir. 2020) (holding that *Bristol-Myers* does not apply to class actions in federal court), *reh'g and reh'g en banc denied* (May 24, 2020); *Lyngaas v. Curaden Ag*, 992 F.3d 412, 434-35 (6th Cir. 2021) (same); *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 55-56 (D. Mass. May 20, 2020) (same), *with Gazzillo v. Ply Gem Indus., Inc.*, No. 17-CV-1077 (MAD) (CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (holding that *Bristol-Myers* applies to class actions in federal court); *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696 (BMC) (GRB), 2017 WL 4217115, at *9

Second Circuit has not yet weighed in.  But either way, the Court need not reach the issue here because it has general personal jurisdiction over all Defendants.  *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (holding that if a court has general jurisdiction over a defendant, the court may "hear any and all claims against" the defendant); *see also, e.g.*, *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2004) ("Where general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state . . . .").  Thus, the Court may exercise jurisdiction over Dannheiser's claims against Defendants.  To the extent that conclusion does not extend to claims brought by putative members of the class or collective action who reside outside of New York, the issue is premature because Plaintiffs have not yet filed a motion to certify either a collective action or a class action.  *See, e.g.*, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 (S.D.N.Y. 2020) (deferring "assessment of whether there is specific jurisdiction over the claims of putative non-New York class members until the class certification stage" (citing cases)); *Chernus v. Logitech, Inc.*, No. 17-673 (FLW), 2018 WL 1981481, at *8 (D.N.J. Apr. 27, 2018) ("[I]t is more prudent to address [personal jurisdiction over out-of-state putative class members] at the class certification stage.").

## C.  Failure to State a Claim

Having addressed the threshold jurisdictional issues, the Court turns to the merits of Plaintiffs' claims, which Defendants move to dismiss for failure to state a claim.  In doing so, the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.

---

(E.D.N.Y. Sept. 20, 2017) (same); *see also* Daniel Wilf-Townsend, *Did* Bristol-Myers Squibb *Kill the Nationwide Class Action*?, 129 YALE L.J. FORUM 205, 208 (2019).

2008).  A claim will survive, however, only if Plaintiffs alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If a plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## 1. Timeliness

First, City Winery moves to dismiss Plaintiffs' federal claims as time barred in whole or in part.  Defs.' Mem. 14-15.[7]  Under the FLSA, the applicable statute of limitations is two years, unless the defendant willfully violated the statute, in which case it is three.  *See* 29 U.S.C. § 255(a); *see also, e.g.*, *Wang v. Palmisano*, 157 F. Supp. 3d 306, 318 (S.D.N.Y. 2016) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting 29 U.S.C. § 255(a))).  Although the statute of limitations is an affirmative defense, a court "may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (cleaned up).  A cause of action under the FLSA

---

[7]    City Winery does not seek to dismiss as untimely Plaintiffs' state-law claims.  *See* Defs.' Mem. at 14-15.  The applicable period under New York law is six years.  *See, e.g.*, *Romero v. Anjdev Enters., Inc.*, No. 14-CV-457 (AT), 2017 WL 548216, at *8 (S.D.N.Y. Feb. 10, 2017). Under Pennsylvania law, it is three years.  *See* 43 PA. STAT. ANN. § 260.9a(g); *Caucci v. Prison Health Servs., Inc.,* 153 F. Supp. 2d 605, 610 (E.D. Pa. 2001).

accrues on the next regular payday following the work period when services are rendered. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013). To bring a FLSA claim beyond the two-year limitation period, "a plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA." *Whiteside*, 995 F.3d at 320.

In light of these standards, Ray's FLSA claims require little discussion because they are untimely whether or not City Winery's alleged violations were willful. As Plaintiffs concede, Pls.' Mem. 16, Ray's employment with City Winery ended no later than June 2021, FAC ¶ 46, and this matter was filed on June 18, 2025, *see id.* Accordingly, all of her FLSA claims must be and are dismissed. Lugo's and Dannheiser's claims require a more nuanced analysis, as they worked for City Winery until July 2023 and October 2023, respectively, *see* FAC ¶ 43, 49, and thus, whether and to what extent their FLSA claims are timely turns (at least in part) on whether they plausibly allege willfulness and can invoke the longer statute of limitations. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Whiteside*, 995 F.3d at 324 (cleaned up). "Mere negligence is insufficient." *Id.* Further, conclusory allegations of willfulness do not entitle a plaintiff to the benefit of the three-year limitations period at the Rule 12(b)(6) stage. *See, e.g.*, *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21-CV-4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022) (finding that the mere allegation that the defendants' alleged conduct was done in "a willful and bad-faith" matter was conclusory and granting a motion to dismiss a claim under the FLSA on statute of limitations grounds).

At this stage of litigation, the Court concludes that Lugo and Dannheiser adequately allege willfulness with respect to their time-shaving and unlawful tip-retention claims. As to the

16

former, Lugo alleges that his managers would "intentionally" wait until he clocked out at the end of his shift, then require him to stay an additional thirty minutes to either perform cleaning or attend a meeting with management. *Id.* ¶ 74. Meanwhile, while Dannheiser was "required to arrive to work 20 minutes early, she was not permitted to clock in until her scheduled start time." *Id.* ¶ 76; *see also id.* ¶ 78 ("Given that Plaintiffs' managers directly ordered them to perform the pre- or post-shift off-the-clock work, Defendants were necessarily aware that Plaintiffs were performing uncompensated work"). As to the latter, Plaintiffs allege that City Winery not only knowingly retained employee tips, but also intentionally obfuscated data regarding the tip pool. *Id.* ¶ 69. These allegations are sufficient to support an inference that City Winery willfully engaged in both unlawful time-shaving and tip-retention. The same cannot be said, however, for Lugo's and Dannheiser's federal minimum wage claims, which are premised on the unlawful crediting of tips. With respect to these claims, the Complaint includes only conclusory allegations of willfulness, which are insufficient. *See Romero*, 2022 WL 624451, at *5.

In sum, the Court concludes that Ray's federal claims must be dismissed as untimely. Lugo's and Dannheiser's claims, on the other hand, are only partially barred by the FLSA's statute of limitations. Specifically, their unlawful tip retention and overtime claims are barred to the extent they accrued before June 18, 2022, and their minimum-wage claims are barred to the extent that they accrued before June 18, 2023.

## 2. Federal Minimum Wage Claims

Next, City Winery moves to dismiss Plaintiffs' minimum wage claims under the FLSA. The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked. *See* 29 U.S.C. § 206. "An employee cannot state a claim for a minimum wage violation 'unless [his] average hourly wage falls below the federal minimum wage.'" *Johnson v.*

*Equinox Holdings, Inc.,* No. 13-CV-6313 (RMB) (JLC), 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)). Accordingly, "to state a FLSA minimum wage claim, Plaintiff must prove that, in a given week, the total amount he was paid divided by the number of hours he worked was less than $7.25 per hour." *Fangrui Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181 (PKC) (JO), 2019 WL 145528, at *5 (E.D.N.Y. Jan. 9, 2019). Indeed, "[t]he Second Circuit has established that a plaintiff does not have a claim under the FLSA for hours worked below 40 in a given week (regardless of whether the plaintiff worked overtime or not), unless the average hourly wage rate paid to such plaintiff falls below the federal minimum wage rate." *Ramirez v. Tifaret Disc., Inc.*, No. 22-CV-10489 (KMK), 2023 WL 6318616, at *4 (S.D.N.Y. Sept. 28, 2023).

Measured against these standards, Lugo's minimum wage claim can be swiftly rejected because he was paid $10 an hour — above the federal minimum wage of $7.25. FAC ¶ 44.[8] Moreover, by failing to address City Winery's arguments on this point, Lugo has abandoned his FLSA minimum wage violation claim. *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (Sullivan, J.). That leaves only Dannheiser, who alleges that she was paid a tipped wage of $4.00 per hour and that, as a result of City Winery's invalid tip credit deductions, she was paid below the prevailing federal minimum wage. FAC ¶ 50. FLSA generally requires employers to pay employees a federal minimum wage of $7.25 per hour. *See* 29 U.S.C. § 206(a)(1). But there is an exception under the statute's "tip credit" provisions, which specify that employers may pay tipped employees at an hourly

---

[8]    Lugo's time-shaving allegations do not salvage his claim, as the additional time worked still does not bring his average hourly wage below the $7.25 federal minimum. Lugo worked forty-eight hours a week and was paid $480 for that time, FAC ¶¶ 44, 45 — an additional unpaid 1.5 hours a week would therefore result in average pay of $9.29 per hour.

wage rate below the minimum wage, provided that the hourly wage and the employees' tips, taken together, are at least equivalent to the minimum wage. *See* 29 U.S.C. § 203(m)(2). "The practice of crediting some of an employee's tips towards the minimum wage is commonly referred to as taking a tip credit." *Dees v. T.L. Cannon Corp.*, No. 20-CV-1537 (BKS/MJK), 2024 WL 3488304, at *4 (N.D.N.Y. July 1, 2024), *report and recommendation adopted*, 2024 WL 3488505 (N.D.N.Y. July 19, 2024).

To benefit from the tip credit, however, an employer must meet certain conditions — including compliance with regulations regarding the division of an employee's tippable and non-tippable labor and sufficient notice of the tip-credit practices to the employee. *See, e.g.*, *Galvez v. 800 Ginza Sushi Inc.,* No. 19-CV-8549 (JPC), 2022 WL 748286, at *9 (S.D.N.Y. Mar. 11, 2022). "If an employer fails to provide the required notice or distributes any amount of pooled tips to an individual ineligible for tip pooling, then the employer is disqualified from counting any tips as a tip credit and must pay the employee the minimum wage, without taking into account any tips that the employee may receive or have received." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 495 (S.D.N.Y. 2024). Here, Dannheiser argues that City Winery was ineligible for a tip credit based both on her division of non-tippable labor and on its failure to provide adequate notice. FAC ¶¶ 54, 58. City Winery spills plenty of ink on the former argument, *see* Defs.' Mem. 7-8, but fails altogether to challenge the latter. On that basis alone, Dannheiser's minimum wage claim survives. *See Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." (internal quotation marks omitted)); *accord Gomez v. MLB Enters., Corp.,* 15-CV-3326 (CM), 2018 WL 3019102, at *6 (S.D.N.Y. June 5,

2018).  The Court need not and does not resolve here the parties' disagreements over Dannheiser's division of non-tippable labor.

### 3.  Federal Time-Shaving Claims

Next, Plaintiffs allege that City Winery's practice of "time-shaving" resulted in overtime violations under the FLSA.  Pls.' Mem. 2-5.  Section 207(a)(1) of FLSA requires that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed" (*i.e.,* time and a half).  29 U.S.C. § 207(a)(1).  "So, to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Specifically, Plaintiffs must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Id.* at 114.  But Plaintiffs need not specify the exact number of hours worked to assert an overtime claim.  *See, e.g.*, *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-CV-601 (ER), 2016 WL 6561302, at *5 (S.D.N.Y. Nov. 4, 2016).

Measured against these standards, Lugo and Dannhesier adequately allege that City Winery engaged in a practice of unlawful time-shaving.  The Complaint alleges that Lugo's managers would "have him stay 30 minutes to either (i) perform additional cleaning or (ii) attend a meeting with management" approximately three times per week.  FAC ¶ 74.  Separate and apart from this extra time, Lugo generally worked eight-hour shifts six days per week, totaling forty-eight hours per week.  *Id.* ¶ 45.  The net result is that Lugo plausibly alleges he was entitled to overtime compensation for the additional 1.5 hours worked per week.  Likewise, Dannheiser alleges that she was required to perform approximately twenty minutes of unpaid, off-the-clock

work prior to the start of her scheduled shifts.  *Id.* ¶ 76.  While Dannheiser normally worked

from 4:30 pm to 12 a.m., five days a week, during the busy season (November and December

2022 and June 2023), she would either work six shifts per week of seven and a half hours each or

five shifts of ten hours per shift.  *Id.* ¶ 51.  On some weeks during the busy season, she worked

six days a week with longer, ten-hour shifts as well.  *Id*.  Therefore, during the busy season, her

work week was well beyond forty hours.  Because Dannheiser adequately alleges that there were

at least twelve workweeks in which she was not paid overtime for the extra time worked, her

overtime claim may proceed.  *See, e.g.*, *Ramirez*, 2023 WL 6318616, at *4 ("[T]o survive a

motion to dismiss a plaintiff . . . must provide sufficient factual context to raise a plausible

inference there was at least one workweek in which he or she was underpaid." (cleaned up)).

City Winery contends that these allegations are insufficient to plead overtime violations

because Lugo and Dannhesier fail to identify specific weeks when the supposed "time shaving"

deprived them of overtime earned.  *See* ECF No. 35, at 1.  The Court disagrees.  The Complaint

provides "sufficient detail about the length and frequency of [Plaintiffs'] unpaid work to support

a reasonable inference that [Plaintiffs] worked more than forty hours in a given week."

*Nakahata*, 723 F.3d at 201.  Lugo and Dannhesier quantify the time-shaved hours with

specificity, as well as the timing and frequency of uncompensated off-the-clock work.  *See* FAC

¶¶ 74, 76.  Courts have approved claims based on similar allegations.  *See, e.g.*, *Gregory v.*

*Stewart's Shops Corp.*, No. 14-CV-33, 2015 WL 893058, at *4 (N.D.N.Y. Mar. 2, 2015)

("[A]llegations that each Plaintiff performed a specific amount of off-the-books work on a

regular basis and that was tied to a specific, identifiable events . . . is sufficient factual content

that allows the court to draw reasonable inference that the defendant is liable for the misconduct

21

alleged." (cleaned up)); *see also* Pls.' Mem. 4-5 (citing cases).  Accordingly, Lugo and Dannheiser's overtime claims may proceed.

### 4. Federal Tip Retention Claims

Finally, Plaintiffs bring claims under Section 203(m)(2)(B) of the FLSA, which provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. § 203(m)(2)(B); *see also Van Duser v. Tozzer Ltd.*, No. 23-CV-9329 (AS), 2024 WL 4635495, at *1 (S.D.N.Y. Oct. 31, 2024) (noting that this provision of the FLSA creates a cause of action against employers for unlawful retention of tips). City Winery argues that Plaintiffs fail to state a plausible claim for unlawfully retained tips under the FLSA because "Plaintiffs' allegations, i.e., that they were paid varying gratuities for tip-optional private events, are wholly consistent with them and other employees being properly paid gratuities."  Defs.' Mem. 9.  But Plaintiffs explicitly allege that City Winery failed to pay them earned tips.  FAC ¶ 67.  Specifically, when Plaintiffs "work[ed] at private buyouts and events" at "luxurious venues with steep rental prices," clients would leave gratuities to staff of "up to 20%."  *Id.* ¶¶ 66-67.  Yet "Defendants failed to convey the full amount, and sometimes any amount, of these gratuities to Plaintiffs."  *Id.* ¶ 67.  Furthermore, City Winery "intentionally obfuscated all data regarding the tip pool," refusing to provide "tipped employees with any information concerning their tip earnings from buyouts and events, including any tip sheets, tip earning logs, tip distribution logs, billing statements, gratuity disclosures, or agreements."  *Id.* ¶ 69; *see* ECF No. 22-17 (employee reviews describing lack of transparency at City Winery with tip pooling).  These allegations are sufficient to state a claim under Section 203(m)(2)(B).

### 5. State-Law Claims

That leaves only Plaintiffs' state-law claims.  As discussed above, the Court limits its review to the viability of the named Plaintiffs' claims, which arise under New York and Pennsylvania law.  *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3).").  Thus, the Court declines City Winery's invitation to scrutinize claims under other state laws.  *See* Defs.' Mem. 10-11, 13-14.  That leaves only two arguments to address here: supplemental jurisdiction over Ray's state-law claims (given that all of her federal claims are time barred); and whether Plaintiffs' state-law claims for breach of contract and unjust enrichment are preempted by the FLSA.  The Court will address these issues in turn.

First, the Court can — and will — exercise supplemental jurisdiction over Ray's state-law claims, which derive from the same factual predicate as Lugo's claims — namely, City Winery's pay practices at the City Winery Pier 57 location, where they both worked.  *See* FAC ¶¶ 43, 46.  Courts regularly exercise supplemental jurisdiction when, as here, a non-FLSA plaintiff's state labor claim stems from labor violations in the same workplace as a FLSA plaintiff.  *See Wraga v. Marble Lite, Inc.,* No. 05-CV-5038 (JG)(RER), 2006 WL 2443554, at *3 (E.D.N.Y. Aug. 22, 2006) ("[F]ederal courts may, and often do, exercise supplemental jurisdiction over state labor law claims even when those employees' [FLSA] claims have been dismissed as time-barred."); *Fallon v. 18 Greenwich Ave., LLC*, No. 19-CV-9579 (MKV), 2021 WL 1105066, at *8 (S.D.N.Y. Mar. 23, 2021) ("Courts commonly find the common nucleus test satisfied where, as here, a non-FLSA plaintiff's NYLL claims involve the same issues of hours

and payments for plaintiffs who were employed in the same jobs, doing the same work, during periods that overlap with many of the FLSA plaintiffs." (cleaned up)).  Accordingly, the Court may exercise — and will exercise — supplemental jurisdiction over Ray's state-law claims.

That leaves City Winery's argument that Plaintiffs' state common law claims are preempted by the FLSA.  The doctrine of preemption derives from the Supremacy Clause of the U.S. Constitution and serves only to "invalidate[ ] state laws that interfere with, or are contrary to, federal law." *Sprint Spectrum L.P. v. Mills,* 283 F.3d 404, 414-15 (2d Cir. 2002) (internal quotation marks omitted).  Preemption may be express or implied, and implied preemption may take the form of either field preemption or conflict preemption.  *See Curtin v. Port Auth. of N.Y. & N.J.*, 183 F. Supp. 2d 664, 667-68 (S.D.N.Y. 2002).  "Conflict preemption arises where (1) 'compliance with both federal and state regulations is a physical impossibility' or (2) the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 668 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)).  The "ultimate touchstone" of any preemption analysis — including conflict preemption analysis — is congressional intent.  *Gade*, 505 U.S. at 96.  Further, and significantly, there is a presumption that Congress did not intend to preempt state law in areas traditionally regulated by the states.  *See California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989).  Conflict preemption thus requires a real, not hypothetical, interference with federal objectives.  *Geier v. Am. Honda Motor Co.,* 529 U.S. 861, 884 (2000) ("[C]onflict pre-emption . . . turns on the identification of actual conflict . . . ." (internal quotation marks omitted)); *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982) ("The existence of a hypothetical or potential conflict is insufficient to warrant . . . preemption.").  Indeed, the Supreme Court instructs that "the mere

existence of a federal regulatory or enforcement scheme . . . does not by itself imply preemption of state remedies." *English v. Gen. Elec. Co.,* 496 U.S. 72, 87 (1990).

While "[i]t is settled in the Second Circuit that FLSA does not preempt state wage and hour laws," *Segal v. Varonis Sys., Inc.*, 601 F. Supp. 2d 551, 554 (S.D.N.Y. 2009) (internal quotation marks omitted), it is not yet settled whether the FLSA preempts state common law claims, *see Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 407 (S.D.N.Y. 2010); *Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 (CJS), 2008 WL 203028, at *5 (W.D.N.Y. Jan. 23, 2008).[9]  District courts within the Circuit are divided on the question.[10]  As are the few courts of appeals that have directly ruled on the issue: While the Fourth Circuit has held that the FLSA preempts duplicative state common law claims on a theory of conflict preemption, *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (holding "that Congress prescribed exclusive remedies in the FLSA for violations of its mandates"), the Ninth Circuit has held that the FLSA's

---

[9]     The Second Circuit has held in passing that "the FLSA's remedial scheme is sufficiently comprehensive as to preempt" employers from using state common law to pursue contribution or indemnification claims for violations of the FLSA. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999). *Herman*, however, concerned whether an employer could seek indemnification or contribution for its own FLSA liability — relief that would directly undermine the Act's liability framework by allowing employers to shift responsibility for statutory violations to third parties. In other words, the Second Circuit's preemption analysis was thus confined to circumstances in which state law would frustrate the FLSA's enforcement mechanism.

[10]     *Compare, e.g., Davis v. Lenox Hill Hosp.*, No. 03-CV-3746 (DLC), 2004 WL 1926087, at *7 (S.D.N.Y. Aug. 31, 2004) ("The defendants mistakenly contend that [Plaintiff] cannot simultaneously assert claims for unjust enrichment and violation of the FLSA."); *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 406-07 (S.D.N.Y. 2010)) ("[W]hile a plaintiff cannot obtain a double recovery under the FLSA and state unjust enrichment law, there is no bar to pleading both claims simultaneously."), *with DeSilva v. North Shore-Long Island Jewish Health Sys.*, Inc., 770 F. Supp. 2d 497, 513-14 (E.D.N.Y. 2011) (summarizing cases holding duplicative claims are preempted); *Cortese v. Skanska USA Inc.*, No. 19-CV-11189 (JSR), 2020 WL 2748438, at *6 (S.D.N.Y. May 26, 2020) ("Although there appears to be no controlling Second Circuit authority, several district courts within this Circuit have held that FLSA preempts state common law claims seeking vindication of the same rights that FLSA protects.")

remedial scheme is "comprehensive," but not "exclusive," and thus does not preempt state-law claims, *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000).  *See also Avery v. City of Talladega,* 24 F.3d 1337, 1348 (11th Cir. 1994) (allowing a claim for breach of contract coextensive with an FLSA claim to survive "as an alternative legal theory"); *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) (holding that the plaintiff was not entitled under state law to damages in excess of those provided by the FLSA because "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA" and a "plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim" (internal quotation marks and citations omitted)).

To some extent, the issue is purely academic: If Plaintiffs "prevail[] at trial on both [their] FLSA and unjust enrichment claim, [they] will be limited to the remedy provided by the FLSA for the violation." *Davis,* 2004 WL 1926087, at *7.  That said, the Court is not convinced that state common law claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of" the FLSA.  *Gade*, 505 U.S. at 98.  Indeed, the Court agrees with the Ninth Circuit that the FLSA's savings clause, 29 U.S.C. § 218(a), which allows states to enact stricter wage, hour, and child labor provisions, "indicates that [the FLSA] does not provide an exclusive remedy."  *Williamson,* 208 F.3d at 1151; *see Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 884 (N.D. Iowa 2008) ("In light of the savings clause, the court thinks the better conclusion is that the FLSA does not provide the exclusive remedy for violations of its mandates"); *see also Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) (acknowledging "Congress' intent to allow state regulation to coexist with the federal scheme" as evidenced by "§ 18(a) of the FLSA, which explicitly permits states to mandate greater overtime benefits.").  Nor, as some courts have concluded, *see, e.g.*, *DeSilva*, 770 F. Supp. 2d at

26

532, does Section 216(c) of the FLSA, which terminates a party's private right of action upon commencement of an action by the Secretary of Labor, call for preemption. Section 216(c), by its terms, terminates only "[t]he right provided by subsection (b)," 29 U.S.C. § 216(c) — that is, the federal cause of action created by the FLSA — and does not purport to extinguish all related employment claims, including independent state common-law claims. Thus, the Court thus declines to dismiss the state common law claims on the basis of preemption.

## CONCLUSION

For the foregoing reasons, City Winery's motion to dismiss is GRANTED in part and DENIED in part. Specifically:

- Ray's FLSA claims are DISMISSED;

- Lugo's federal minimum-wage claim is DISMISSED;

- Dannheiser's federal minimum-wage claims are barred to the extent that they accrued before June 18, 2023; and

- The named Plaintiffs' claims may otherwise proceed.

Further, the Court declines to grant leave to amend as to the dismissed claims because the problems with them are substantive. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Moreover, Plaintiffs do not seek leave to amend or state that they are in possession of facts that would cure the problems with those claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). On top of all that, the Court granted Plaintiffs leave to amend in response to City Winery's motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No.

19; s*ee, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013).

Unless and until the Court orders otherwise, City Winery shall answer the remaining claims within **three weeks of the date of this Opinion and Order**. *See* Fed. R. Civ. P. 12(a)(4)(A). In addition, the initial pretrial conference, previously adjourned, is hereby reinstated and RESCHEDULED for **April 22, 2026**, at **9:00 a.m.** To access the conference, counsel should call the Court's dedicated conference call line at (855) 244-8681 and use access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID number, press the pound (#) key again. The parties are reminded to follow the procedures for telephone conferences described in the Court's Individual Rules and Practices for Civil Cases, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman, including Rule 3(B)(i), which requires the parties, no later than twenty-four hours before the conference, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the conference and the telephone numbers from which counsel expect to join the call. The parties are reminded that, no later than the **Thursday before the conference**, they must submit a joint status letter and proposed Case Management Plan. *See* ECF No. 3.

The Clerk of Court is directed to terminate ECF No. 30.

SO ORDERED.

Dated: March 17, 2026
New York, New York

_____
JESSE M. FURMAN
United States District Judge

28