akerman

Christoper R. Lepore

Akerman LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
D: 312 634 5715

Upon review of the record, the Court concludes that it would be on firm ground imposing sanctions on Plaintiffs' counsel. But exercising its discretion, the Court declines to do so - in the hopes that both sides have now gotten the message and will, going forward, comply with both the letter and spirit of the meet-and-confer requirement and deal with one another professionally and in good faith.

SO ORDERED.

August 18, 2026

August 11, 2026

**VIA ECF**

The Honorable Judge Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl St., Room 24B
New York, NY 10007

**Re:** ***Lugo et al. v. City Winery LLC, et al. — Response to Plaintiffs' August 7, 2026 OSC Response (Doc. 74)***
**Case No. 1:25-cv-05135-JMF**

Dear Judge Furman:

We are counsel for Defendants City Winery, LLC, et al. ("Defendants") in the above-captioned matter. We write in response to Plaintiffs' August 7, 2026 letter (ECF No. 74) responding to the Court's Order to Show Cause why Plaintiffs should not be sanctioned for failing to make a good-faith attempt to meet and confer before filing ECF No. 61 (the "OSC Response"). The record shows that Plaintiffs failed to satisfy the good-faith conferral requirements of Fed. R. Civ. P. 37(a)(1), Local Civil Rule 37.2, and this Court's July 14, 2026 Order (ECF No. 56) before filing ECF No. 61. Rather than answer for that failure, the OSC Response mischaracterizes the record. Defendants respectfully submit that sanctions are warranted. Given the Court's prior admonition regarding Plaintiffs' gamesmanship (ECF No. 60), Plaintiffs' counsel should be ordered to pay Defendants' reasonable attorneys' fees incurred in responding to ECF No. 61 and preparing this response.

## A. The Chronological Record

**May 29–July 8, 2026.** After Defendants followed up three separate times, the parties agreed to a sampling protocol and a mutual extension setting June 15 as the discovery-response deadline. Defendants complied: they provided the anonymized class list on June 10, served written responses on June 15, and made productions on June 24 and June 25. Plaintiffs then went silent from May 29 until Defendants' July 8 pre-motion letter (ECF No. 54), which reported their nonresponse and missed deadline after Plaintiffs' counsel ignored express email follow-ups.

**July 14–17.** On July 14, the Court entered its Order (ECF No. 56), setting July 17 as the deadline for Plaintiffs Lugo, Ray, and Dannheiser to serve discovery responses. At 6:26 p.m. on Friday, July 17, Plaintiffs served responses for Lugo and Ray only. Plaintiffs said they were "attempting to obtain" Dannheiser's interrogatory responses and that those responses would "follow shortly." The same email requested a conference on July 20 or 21 but identified no deficiency in Defendants' responses or production; it said only that Plaintiffs had issues to discuss.

**July 21–22.** On July 21, Plaintiffs filed ECF No. 58 seeking an extension of their deadline to file a motion for conditional certification. Before doing so, Plaintiffs' counsel left a single voicemail for defense counsel after regular business hours. Neither the voicemail nor any emails requested, previewed, or mentioned an extension of the conditional-certification briefing deadline. The July 17 email instead offered conference availability to discuss Plaintiffs' production and unspecified "issues." Plaintiffs never communicated an extension request to Defendants by phone or email, yet ECF No. 58 portrayed Defendants' purported "non-response" as though Plaintiffs had made such a request and Defendants had ignored it. Plaintiffs thus faulted Defendants for failing to respond to a request Plaintiffs never made. Defendants opposed ECF No. 58 (ECF No. 59), and on July 22 the Court denied the extension in part and admonished Plaintiffs' gamesmanship (ECF No. 60).

At 8:56 a.m. on July 22, Plaintiffs renewed their request for Defendants' availability "this afternoon and tomorrow," referring for the first time to "Defendants' discovery issues, including in Defendants' production." At 10:15 a.m., the undersigned asked for an issues list so counsel could identify the purported deficiencies, confer with Defendants, and discuss them in detail by early the following week. Plaintiffs' counsel did not object, and Defendants understood that the parties were working to resolve any disputes.

**July 24.** At 12:33 p.m., Defendants served their own deficiency letter identifying numerous deficiencies in Lugo's and Ray's July 17 responses and giving Plaintiffs fourteen days—through August 7—to cure and seeking Dannheiser's overdue interrogatory responses "immediately"; Defendants also requested a conference during the week of July 27. At 4:25 p.m., Plaintiffs served an eight-page deficiency letter, demanded certain identified documents by Monday at noon, and threatened judicial intervention. At 4:59 p.m., Defendants explained that Dannheiser's responses were still missing, that Plaintiffs had not identified the alleged documents with specificity, and that the Monday-noon deadline was unworkable. Defendants warned that any filing without conferral would be brought to the Court's attention as gamesmanship. At 5:16 p.m., Plaintiffs repeated their request, offered to be available all day Monday and Tuesday, and supplied a cell number. Plaintiffs did not call to discuss discovery before filing.

**July 27–August 4.** On July 27, Defendants emailed a supplemental production at 11:32 a.m. and promised additional pay-stub supplementation shortly thereafter. Without any further communication, Plaintiffs filed ECF No. 61 without a meet-and-confer. The filing was especially revealing because Plaintiffs' own July 24 email offered to make themselves available "all day Monday and Tuesday." Plaintiffs therefore filed on Monday, July 27, before their own proposed

conferral window had passed: they offered to confer on Tuesday, July 28, but rushed to Court on Monday. This was not a good-faith effort to confer.

On July 31, Defendants—not Plaintiffs—took the initiative and proposed an August 4 conference in advance of the Court's August 5 conference to narrow the issues. Plaintiffs did not respond to that proposal. Only after Defendants followed up again on August 3 at 5:16 p.m. did Plaintiffs respond. The August 4 conference therefore occurred only because Defendants took the initiative to schedule it. The record is not five prompt requests met by stonewalling, as Plaintiffs portray it; it is vague initial outreach, a filing before Plaintiffs' own proposed conferral window closed, and a conference Defendants alone arranged to narrow issues before Court involvement.

**B. Dannheiser's Continuing Default.** ECF No. 56 required all three Plaintiffs to respond to written discovery by July 17; Dannheiser's interrogatory responses were never served. The email transmitting Lugo and Ray's discovery responses on July 17 was the only time Plaintiffs' counsel mentioned Dannheiser's outstanding discovery responses. Plaintiffs never accounted for that outstanding Court-ordered obligation in their July 22 or July 24 correspondence, and the OSC Response omits it from its own "meet-and-confer record." At the August 4 conference—more than two and a half weeks after the deadline—the responses remained outstanding. Only then did Plaintiffs commit to an August 14 response date or dismissal of Dannheiser's claims—about a month after the Court's deadline.

Against that backdrop, Defendants' request that Plaintiffs address Dannheiser's responses before scheduling was not an improper precondition. It was an effort to obtain overdue discovery that was the subject of an existing Court Order. Defendants had raised the issue earlier on July 24 and requested an immediate response, but Plaintiffs did not respond. Plaintiffs then served their deficiency letter late Friday afternoon with a Monday-noon deadline and threatened judicial intervention—giving Defendants only a few business hours to respond. That timetable was unreasonable and left no meaningful opportunity for conferral. In any event, Defendants diligently worked to supplement their production before Plaintiffs' deadline and expressly informed Plaintiffs that additional supplementation would follow shortly. Plaintiffs nevertheless filed ECF No. 61 before Defendants could do so and before the Tuesday, July 28 conferral date Plaintiffs themselves had proposed. Rule 37(a)(1) and Local Civil Rule 37.2 do not require a party to ignore a parallel, overdue discovery violation when deciding how to conduct a meaningful conference. Plaintiffs' description of this obligation as unrelated is a selective account of the exchange and omits why Defendants raised it.

**C. Plaintiffs' Initial Communications Did Not Identify Any Deficiency.** Plaintiffs' July 17 email requested a conference "regarding Plaintiffs' production" and added only, "I also have issues I would like to discuss." It did not say that Plaintiffs intended to challenge Defendants' discovery responses or production, much less identify any withheld document, objection, or allegedly deficient response. Plaintiffs' July 22 email was the first to reference "Defendants' discovery issues, including in Defendants' production," but it still supplied no specifics. Defendants had served their responses on June 15 and received no complaint for more than five

weeks. Plaintiffs cannot turn a vague, one-line reference to unspecified "issues" into fair notice of deficiencies serious enough to support motion practice. Rule 37(a)(1) and Local Civil Rule 37.2 require a good-faith effort directed to an identified dispute—not an unexplained request for a call.

**D. The Issues-List Request Was Reasonable and Necessary**. The undersigned's July 22 request was not a refusal to confer; it was a practical step to make a conference between the parties substantive. Plaintiffs did not object at the time. We asked to know the purported deficiencies in advance so we could confer with our clients and discuss them in detail by early the following week. Plaintiffs' eight-page letter on July 24 supplied that information. Its very length confirms that the issues were complex enough to warrant advance specificity; the letter itself vindicates Defendants' request for an issues list. Yet Plaintiffs did not allow enough time for Defendants to confer; they imposed a Monday-noon ultimatum and filed instead. None of Plaintiffs' earlier requests identified a substantive issue. A conference cannot be meaningful when the recipient does not know what specific requests or responses are at issue. Advance specificity was not an improper condition; it was the reasonable measure that made informed conferral possible.

**E. The July 17–22 Timing Does Not Establish Stonewalling.** Plaintiffs' effort to portray the time elapsed between July 17 through July 22 (which encompassed a weekend) as stonewalling ignores that lead defense counsel Christopher Lepore was traveling internationally and was in Paris on a long-planned trip from July 14 through July 19, with an out-of-office auto-reply. Plaintiffs' vague July 17 email arrived during that disclosed absence. Mr. Lepore responded promptly on July 22 at 10:15 a.m., requesting the itemized issues needed for substantive discussion and committing to confer in detail by early the following week. A short period during disclosed unavailability, followed by a prompt substantive response, is not stonewalling. The OSC Response ignores that inconvenient fact.

**F. Other Judges' Individual Practices Do Not Govern.** Plaintiffs' reliance on Judge Liman's Individual Practices § 4(C) and Judge Subramanian's Individual Practices § 5(C) is misplaced. Those are the practices of other judges; they do not govern this case. The applicable standards are Fed. R. Civ. P. 37(a)(1), Local Civil Rule 37.2, and this Court's July 14 Order (ECF No. 56). None imposes a fixed 48-hour or two-business-day deadline for scheduling a conference. Plaintiffs cite no authority holding that another judge's individual practice controls the good-faith analysis before this Court. Nor can a timing rule convert Plaintiffs' vague July 17 request into fair notice of an alleged deficiency. Invoking other judges' practices cannot excuse filing before a meaningful conferral.

**G. Plaintiffs' OSC Response Refuses to Accept Responsibility.** Plaintiffs' counsel accepts no responsibility for the sequence of events described in the OSC Response. He offers no acknowledgment that filing ECF No. 61 before conferral was a mistake, no recognition that the filing imposed an avoidable burden on the Court, and no contrition for a preventable procedural failure. Instead, he doubles down on a one-sided narrative that shifts all blame to Defendants.

That refusal to acknowledge responsibility is telling. Rather than answer the Court's concerns directly, the OSC Response recasts every disputed decision as Defendants' fault. Counsel's lack of candor and contrition underscores that the OSC Response seeks to rewrite the record rather than answer the Order to Show Cause.

**H. Plaintiffs Did Not Satisfy the Good-Faith Requirement.** The phrase "conferred or attempted to confer" in Fed. R. Civ. P. 37(a)(1) does not make every request sufficient; the attempt must be in good faith and directed toward resolving an identified dispute without court action. Before filing ECF No. 61, Plaintiffs waited weeks after Defendants' responses, focused their initial request on Plaintiffs' own production, supplied no specific issue until July 24, imposed a Monday-noon ultimatum, and filed after it expired without a substantive call. Most tellingly, Plaintiffs filed on Monday, July 27, even though they had offered to confer all day Tuesday, July 28; they did not even wait for their own proposed conferral date to pass. Plaintiffs also remained in violation of the Court's July 17 deadline as to Dannheiser. Whatever occurred at the August 4 conference occurred only after Plaintiffs filed ECF No. 61—and even that conference was scheduled only because Defendants proposed it on July 31 and followed up on August 3 after Plaintiffs failed to respond. Plaintiffs neither proposed the conference nor responded to Defendants' initial outreach; it was not the product of any effort by Plaintiffs. That post-filing conference cannot retroactively satisfy Rule 37(a)(1)'s requirement that the parties confer (or attempt to confer) in good faith before filing. The OSC Response offers no answer to that dispositive defect.

**I. Relief Requested**. Defendants are mindful that the Court should not need to be involved in discovery disputes that the parties can resolve among themselves. Defendants sincerely apologize for the Court's involvement here and for burdening the Court's time. Defendants are committed to upholding the Court's expectations of good-faith professionalism in conducting discovery.

For these reasons, Defendants respectfully request that the Court: (1) find that Plaintiffs failed to satisfy the good-faith meet-and-confer requirement of Local Civil Rule 37.2 and the Court's July 14, 2026 Order (ECF No. 56); and (2) sanction Plaintiffs' counsel under Fed. R. Civ. P. 37(a)(5) and the Court's inherent authority by ordering Plaintiffs' counsel to pay Defendants' reasonable attorneys' fees and costs incurred in responding to ECF No. 61 and preparing this response to the Order to Show Cause. Plaintiffs' tactical filing, continuing noncompliance, selective account of the record, and refusal to acknowledge their own shortcomings warrant these consequences under the governing rules.

Respectfully Submitted,

*/s/ Christopher Lepore*
Christopher R. Lepore
Partner

cc: C.K. Lee, Esq. (via ECF)
Robert A. Kansao, Esq. (via ECF)